UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARK WILLNERD, an individual<br><br>Plaintiff,<br><br>v.<br><br>SYBASE, INC., a Delaware corporation,<br><br>Defendant. | Case No. 1:09-CV-500-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is Plaintiff Mark Willnerd's Motion to Determine Existence of Privilege, Motion for *In Camera* Review, and Motion to Compel (Dkt. 62). Willnerd asks the Court to determine whether a particular email bates numbered SYBASE006665 is protected by the attorney-client privilege. Willnerd claims that it is not.

Willnerd further contends that Defendant Sybase Inc.'s assertion of privilege with respect to the 6665 email raises concerns that Sybase has improperly claimed that other documents listed on its privilege log are privileged when they are not. Alternatively, Willnerd contends that Sybase has selectively disclosed certain emails labeled as privileged to gain a tactical advantage, and therefore their disclosure "constitutes subject-matter waiver of **all** communications with the Curiale firm." *Pl.'s Opening Br.* at 2, Dkt.

62. Based on this arguments, Willnerd requests that the Court "conduct an *in camera* review to determine whether all 215 communications identified on Sybase's privilege log are either (1) not privileged; or (2) should be disclosed because of Sybase's selective disclosure of other (favorable) communications on the same subject matter." *Pl.'s Reply Brief* at 168, Dkt. 94.

For the reasons set forth below, the Court finds that the 6665 email is privileged. In addition, the Court concludes that Sybase did not selectively disclosed certain privileged emails to gain a tactical advantage. Therefore, the Court will deny Willnerd's motions.

## BACKGROUND

Defendant Sybase employed Plaintiff Mark Willnerd until his termination on July 17, 2008. Prior to terminating Willnerd, Sybase contacted its outside counsel, the employment and labor law firm Curiale Hirschfeld Kraemer LLP, for assistance in investigating two complaints made against Willnerd. For the past ten years, the Curiale firm has represented Sybase in employment litigation, provided Sybase with advice and counsel with respect to labor and employment issues, and conducted fact-finding workplace investigations. In this case, Richard J. Curiale, the firm's managing partner and Sybase's primary contact with the firm, asked his colleague, John F. Baum, to contact Sybase and conduct an investigation. *Curiale Aff.* ¶ 3.

The first incident Baum investigated involved a formal written complaint of retaliation made by Brad Schmidt, a senior manager of Development and Engineering and

Willnerd's direct report. Schmidt accused Willnerd of intentionally reassigning him to a different job position as part of a reorganization of the Boise office to force Schmidt to quit. *Baum Aff.* ¶ 2, Dkt. 84.

The second incident investigated related to Sybase Human Resource Manager Stefanie Thiel's complaint that Willnerd came into her office, unbuckled his belt, and held out the waistband of his pants to show that he had lost weight. Thiel had mentioned the incident to her supervisor, Karen Chapin, a senior director of Human Resources. Chapin discussed the incident with Willnerd, and she instructed him not to speak with Thiel about it. Willnerd, ignoring Chapin's admonishment, approached Thiel about her complaint. Although Thiel denied making a sexual harassment claim, she reported to Chapin that Willnerd made her feel uncomfortable by confronting her. *Id.* ¶ 3.

Baum began his investigation into these incidents on May 16, 2008. He conducted a series of interviews of Sybase employees and then prepared a written investigation report containing a summary of his factual findings. *Id.* ¶ 5. On May 27, 2008, Baum completed and disseminated the report to Nita White-Ivy, Sybase's Vice President of Worldwide Human Resources. As a result of his investigation, Baum concluded that Willnerd had not engaged in any unlawful conduct, but that he had exhibited bad judgment in unbuckling his belt in the presence of Thiel and in rolling out the reorganization. *Id.* ¶ 7.

The May 27, 2008 dissemination of the Baum report marked the end of Baum's investigation. According to Sybase, neither Baum nor any other Curiale attorney

continued to serve in a fact-finding role with respect to Willnerd's conduct or management.

Sybase's assessment of Willnerd as a manager continued, however. *Id.* ¶¶ 8-10. Baum's investigation results prompted Sybase to conduct a "360 Review" of Willnerd's management skills with the assistance of an outside consultant. Also, Sybase conducted an internal investigation into whether Willnerd permitted Johannes Alberti, a foreign national, to work in the U.S. prior to obtaining his L-l visa in violation of U.S. immigration law, and whether Willnerd had approved unauthorized expenses for Alberti. *Chapin Aff.* ¶ 8 & Ex. A, Dkt. 83.

The results of the Baum investigation, the 360 Review, and the internal investigation all served as a basis to terminate Willnerd in July 2008. Willnerd alleges that Sybase initiated the 360 Review and then terminated him in retaliation for his participation in the investigation of the so-called "belt buckle" incident.

Baum continued to provide legal advice to Sybase regarding Willnerd's employment after he completed his investigation on May 27, 2008 and throughout the 360 Review and the internal investigation. He states that he believed all of the advice and communications he exchanged with Sybase following the completion of the investigation were privileged. *Baum Aff.* ¶ 10. It was during this time – after Baum completed his investigation and before Willnerd's termination – when Baum received the contested email.

The contested email, dated June 3, 2008, was drafted by Chapin and sent to Baum

and White-Ivy. *Banducci Aff.,* Ex. L, Dkt. 62-2. It recounts two conversations between Chapin and Terry Stepien, Willnerd's manager, about the Baum investigation and the 360 Review of Willnerd. *Id.* Sybase inadvertently produced this email with its discovery responses.

## ANALYSIS

1.  **The 6665 Email Is Privileged**

    Willnerd argues that the attorney-client privilege does not attach to the 6665 email because (1) no lawyer was a party to the conversations summarized in the email between Chapin and Stepien; and (2) Baum was acting as "investigator and business advisor" rather than a legal advisor when he received the email.

    Confidential communications made by a client to an attorney to obtain legal services are protected from disclosure by the attorney client privilege. *Fisher v. United States*, 425 U.S. 391, 403 (1976). The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). Open communication assists lawyers in rendering legal advice, not only to represent their clients in ongoing litigation, but also to prevent litigation by advising clients to conform their conduct to the law and by addressing legal concerns that may inhibit clients from engaging in otherwise lawful and socially beneficial activities. *Upjohn*, 449 U.S. at 389. The cost of these benefits is the withholding of relevant

information from the courts. *Id.*

Courts recognize the inherent tension between the beneficial goals of the attorney-client privilege and a party's right to discover relevant information, and seek to limit the application of the privilege to communications (1) made in confidence, and (2) for the purpose of facilitating legal services by the lawyer for the client. *See United States v. Chen,* 99 F.3d 1495 (9th Cir. 1996). The client must not have waived the privilege. *Id.*

Here, the email in question recounted conversations between two Sybase employees, Karen Chapin and Terry Stepien – neither of whom are attorneys. Willnerd argues that the substance of these conversations between Chapin and Stepien are not privileged, and the Court agrees. Undoubtedly, Willnerd could ask Chapin to recount her conversations with Stepien, and she would be required to answer. Sybase could not conceal the contents of the conversations between Chapin and Stepien merely because Chapin revealed them to Baum. *Upjohn*, 449 U.S. at 395 (1981).

This, however, does not resolve the question at issue here. "A fact is one thing and a communication concerning that fact is an entirely different thing." *Upjohn*, 449 U.S. at 395. Even if the privilege does not attach to the underlying fact, communications of that fact are privileged. *Id. See also Muro v. Target Corp.,* 250 F.R.D. 350, 363 (N.D.Ill. 2007). Willnerd's first argument – that the email to Baum is not privileged because "no lawyer was a party to the conversations summarized in the email between Chapin and Stepien" – misses this distinction. Here, the issue is not whether Chapin's conversation with Stepien is privileged; instead, the question is whether Chapin's email to Baum and

White-Ivy is privileged.

The Court finds that the contested email was drafted for the purpose of facilitating legal representation. Baum testified that he had concluded his fact-finding investigation into the belt buckle incident and Willnerd's handling of the reorganization. He then continued to serve Sybase in his role as legal advisor and counselor on employment matters, as he and others in the Curiale firm had done for years. Communications between a client and its outside counsel are presumed to be made for the purpose of obtaining legal advice. *U.S.. v. Chen,* 99 F.3d 1495, 1501 (9th Cir. 1996) (rebuttable presumption that lawyer is hired to give legal advice). And nothing in the record rebuts this presumption.

A showing that the attorney was retained "without reference to his knowledge and discretion in the law" rebuts the presumption, *Chen,* 99 F.3d at 1501, but Willnerd makes no such showing. To the contrary, Chapin testified here that she drafted the email and sent it to White-Ivy and Baum because she had concerns about Sybase's legal exposure from Sybase's investigation and review of Willnerd. *Chapin Aff.* ¶ 5. This is precisely the type of legal services the Curiale firm provides. Moreover, the privilege is not vitiated simply because Baum weighed business considerations in rendering legal advice: "A client is entitled to hire a lawyer, and have his secrets kept, for legal advice regarding the client's business affairs." *Chen,* 99 F.3d at 1501.

Therefore, the Court finds that the 6665 email is privileged and must be returned.

### 2. Sybase Did Not Waive the Attorney-Client Privilege By "Selectively Disclosing" Privileged Documents

Willnerd argues that Sybase waived the attorney-client privilege by selectively disclosing certain privileged communications to gain a tactical advantage.

"The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness." *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996). "Its principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." *Id.* at 340-41. The "voluntary disclosure of the content of a privileged attorney communication results in waiver as to all other communications on the same subject." *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (quoting *Weil v. Inv./Indicators, Research & Mgmt.*, 647 F.2d 18, 24 (9th Cir. 1981)). The scope of the waiver, however, is limited to "communications about the matter actually disclosed." *Hernandez*, 604 F.3d at 1100 (citation omitted).

#### A. *Baum Report and Related Communications*

Willnerd maintains that he is entitled to all communications generated between Sybase and the Curiale firm during the time frame of the Baum report because the report is not privileged and because Sybase disclosed the report to the Idaho Human Rights Commission before this litigation began.

Sybase responds that it voluntarily produced the Baum report, as well as

communications related to Baum's investigation, under the auspices of a limited waiver agreement. Sybase sent counsel for Willnerd a letter stating that its agreement to voluntarily produce Baum for deposition and all documents related to Baum's role as the investigator of Thiel's and Schmidt's complaints "would not constitute a 'subject matter' waiver of the attorney-client privilege or work product doctrine in this case or would in any way waive our ability to assert attorney-client privilege or work product doctrine as to documents and communications sent to or authored by Baum in his role as legal advisor to Sybase outside the scope of his role as an investigator." *Proposed Waiver Agreement Letter* at 1, Dkt. 62-2. Willnerd denies reaching any such agreement regarding the scope of the waiver and asserts that communications on "similar subject matters" should be produced. The Court disagrees.

Even if the parties did not reach a "limited waiver agreement," Sybase's disclosure of the Baum report and other communications related to Baum's investigation only waived the privilege with respect to the matter actually disclosed – in other words, Baum's investigation into the complaints by Schmidt and Thiel. *Hernandez*, 604 F.3d at 1100 (citations omitted). Therefore, Sybase must only disclose communications between Baum and Sybase about that investigation; it is not required to disclose privileged communications on other subject matters during the same time frame simply because they are "similar."

Guided by the principles of fairness, and having in mind the need to protect the frankness of client disclosures while seeking to protect against unfair partial disclosures,

the Court concludes that Sybase's disclosure of communications related to the Baum investigation does not justify a broad foray into Sybase's privileged communications on "similar," but not the same, subject matters. However, to the extent Sybase has not disclosed communications relating to the Baum investigation, it should do so.

    **B.**    *Emails Regarding the 360 Review, the Internal Investigation into Alleged Approval of Expenses and Willnerd's Termination*

Willnerd argues that Sybase also waived the privilege by producing several emails discussing topics unrelated to the Baum investigation and which were labeled attorney-client privilege and sent to Baum and Curiale. Those emails cover matters ranging from Willnerd's 360 Review to the final decision to terminate him.

In response, Sybase contends that the emails Willnerd has attached to his motion were never intended to be privileged communications. Thus, says Sybase, their disclosure cannot be the basis for any waiver. That explanation is corroborated by the record. Although the emails bear the attorney-client privilege label, and Curiale attorneys were copied on some of these emails, Chapin and White-Ivy testified that they copied the attorneys as a routine matter, and not to secure legal advice. *Chapin Aff.* ¶ 6-7 and 9-11; *White-Ivy Aff.* ¶ 6-10. And a review of the emails' contents supports this characterization: the emails forward information to other Sybase employees about Willnerd, and the attorneys were merely copied. "The mere fact that outside counsel was copied with the e-mail will not shield communications not made for the purpose of securing legal advice" *See, e.g., United States v. ChevronTexaco Corp.*, 241 F.Supp.2d

1065, 1075 (N.D.Cal. 2002).

Only one email gave the Court pause. On June 3, 2008, Chapin sent an email directly to White-Ivy and Baum, and Baum was not merely copied. It is addressed, "Hi Nita [White-Ivy] and John [F. Baum]." *Email from Chapin to White-Ivy and Baum*, SYBASE00662, Dkt. 62-2 at 78. On its face, it appears this email could be privileged. But Chapin testified that she did not send it to Baum for the purposes of securing legal advice, and the Court finds no reason to doubt her testimony. In the email, Chapin states she is only providing her notes from a conversation she had with Willnerd about the 360 Review. There is nothing to suggest in the email that she had concerns about the conversation and needed Baum's legal advice. Rather, the email appears merely informational.

Accordingly, the Court finds that the attorney-client privilege does not apply to the emails Willnerd submitted as evidence of Sybase's selective disclosure. Therefore, their disclosure did not result in a waiver.

Even if the privilege did attach to the email, the Court does not find its disclosure demonstrates that Sybase has selectively disclosed favorable communications while withholding unfavorable ones to gain a tactical advantage. Rather, the evidence shows that Sybase went to great pains to ensure it only withheld communications actually covered by the privilege. Therefore, assuming the email is privileged, its disclosure appears at most inadvertent and does not justify a finding that Sybase waived the privilege under these facts. *U.S. v. de la Jara,* 973 F.2d 746, 749 (9th Cir. 1992) ("In

determining whether the privilege should be deemed to be waived, the circumstances surrounding the disclosure are to be considered.").

3.  **An In Camera Review Is Not Necessary**

Because the Court finds that Sybase properly asserted privilege with respect to the 6665 email, and further finds that Sybase did not selectively disclose privileged documents, the Court will not conduct an *in camera* review of the other 215 documents withheld by Sybase as privileged. There is no evidence that Sybase has improperly withheld privileged documents. Willnerd's Motion is therefore denied.

## ORDER

**IT IS ORDERED THAT:**

1.  Upon its review of the document, the Court finds that the 6665 email is subject to privilege.

2.  Willnerd's Motions for In Camera Review and to Compel (Dkt. 62) are DENIED.

DATED: **December 22, 2010**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge