UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

MARK WILLNERD,

     Plaintiff,

  v.

SYBASE, INC., a Delaware corporation,

     Defendant.

Case No. 1:09-CV-500-BLW

**MEMORANDUM DECISION AND ORDER**

   Before the Court are Defendant's Motion for Summary Judgment (Dkt. 116),

Plaintiff's Motion for Partial Summary Judgment (Dkt. 117), Plaintiff's Motion to Strike

Parts of Defendant's Affidavits in Support of Summary Judgment (Dkt. 123), and

Defendant's Motion to Strike Plaintiff's Evidence in Opposition to Summary Judgment

(Dkt. 131).  The Court heard oral argument on May 2, 2011.  Being familiar with the

record, pleadings, and parties' arguments from hearing, the Court will grant Defendant's

Motion for Summary Judgment (Dkt. 116), deny Plaintiff's Motion for Partial Summary

Judgment (Dkt. 117), and deny as moot, the Motions to Strike (Dkts. 123, 131), as more

fully explained below.

## BACKGROUND

   Plaintiff Mark Willnerd was employed by Defendant Sybase until his termination

on July 18, 2008.  Willnerd contends that he was wrongfully discharged because of his

participation in the investigation of an incident involving Willnerd. In that incident, Willnerd unbuckled his belt and held out the waistband of his pants in the presence of Stefanie Thiel, the Human Resources Manager for Sybase's Boise office, to show that he had lost weight. *Second Am. Compl.*, Dkt. 98, ¶ 37. Sybase investigated the incident in May 2008, and advised Willnerd that his actions could be perceived as sexual harassment. *Id.* ¶ 42. According to Willnerd, Sybase employees subjected him to a hostile work environment in retaliation for his participation in the investigation.

In May 2007, Willnerd entered into an Educational Assistance Agreement with Sybase, in which Sybase agreed to pay for Willnerd to attend Stanford's Executive Program. Under the terms of the agreement, if Willnerd was involuntarily terminated for cause within 24 months of executing the agreement, Willnerd would be required to reimburse Sybase for the cost of the program. *Id.* ¶ 14; *Agreement*, Ex. 57 to *Willnerd Dep.*, Dkt. 116-12 at 33.

Through May and June of 2008, Sybase investigated concerns about Willnerd's exercise of judgment; these included the belt buckle incident, Willnerd's handling of a re-organization, and his approval of expenses for a foreign national, Johannes Alberti. *Second Am. Compl.* ¶¶ 49, 55. Around this time, Sybase also conducted a "360" review of Willnerd, a subjective evaluation used for employee training and development through feedback from various respondents. *Id.* ¶ 50. Willnerd was terminated by his supervisor, Terry Stepien, at a meeting sometime in or around July of 2008. *Id.* ¶ 58. Stepien formalized Willnerd's termination by a letter dated July 17, 2008, stating three reasons for Willnerd's discharge: (1) Willnerd's handling of a significant re-organization, (2)

Willnerd's disregard of Karen Chapin's instruction not to approach Stephanie Thiel about the belt buckle incident, and (3) Willnerd's actions in approving payments for Johannes Alberti. *Termination Ltr.*, Ex. 90 to *Willnerd Dep.*, Dkt. 116-12 at 60-61. In the letter, Stepien notes that Willnerd's inability to continue as an effective manager following his mishandling of the re-organization "was clearly reflected in [his] 360 review." *Id.*

In October 2008, Sybase demanded reimbursement of $48,950 paid by Sybase for Willnerd's tuition, under the Education Assistance Agreement. *Second Am. Compl.* ¶ 73. Willnerd asserts that Sybase is in breach of the Agreement, by attempting to wrongfully compel Willnerd to return the funds. *Id.* Willnerd seeks declaratory relief that Sybase has no right to recover the funds, because the stated "causes" for his discharge were false. *Id.* ¶ 112. In a counterclaim, Sybase asks for an order that it is entitled to reimbursement under the Agreement. *Answer and Counterclaim*, Dkt. 9, ¶¶ 21-27.

Willnerd also alleges that Senior Director of Sybase Human Resources Karen Chapin knowingly and maliciously made false and defamatory statements about Willnerd. According to Willnerd, these statements impugned his reputation at Sybase and in the general business community. *Second Am. Compl.* ¶¶ 117-121.

## LEGAL STANDARD

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private

resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000). This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch.*

*Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)).  Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## ANALYSIS

**1.    Willnerd's Motion for Partial Summary Judgment On His Claim That Sybase Breached the Covenant of Good Faith and Fair Dealing**

Under Idaho law, in the absence of an express agreement between the employer and the employee limiting either party's right to terminate the contract, either the employer or the employee may terminate the employment relationship at-will, that is, at any time for any reason without incurring liability.  *MacNeil v. Minidoka Memorial Hosp.*, 701 P.2d 208 (Idaho 1985).  An express agreement sufficient to overcome the at-will presumption can be found in an employer's employment manual or policies if they limit the reasons for termination and the evidence indicates that the parties intended that the manual or policies constitute an element of the employment contract.  *See Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 388 (Idaho 2005).  Employment manuals and policies do not change the employee's at-will status when they contain disclaimers that specifically negate any intention on the employer's part to have the policies become part of the employment contract or explicitly state that employment is at-will.  *Id.*; *Raedlein v. Boise Cascade*, 931 P.2d 621, 623-24 (Idaho 1996); *Lord v. Swire Pac. Holdings, Inc.*, 203 F. Supp.2d 1175, 1179 (D. Idaho 2002).

Here, there is no basis to argue that Willnerd was anything but an at-will employee. The offer of employment submitted by Sybase and signed by Willnerd included a provision entitled "Employment At Will," which stated that "Sybase can terminate your employment at any time with or without cause." *Offer Letter*, Ex. 1 to *Banducci Dec.*, Dkt. 117-4 at 2. Moreover, Sybase's employee manual contains an explicit at-will policy, under which Sybase may "terminate the employment relationship at any time, with or without cause or prior notice, as it deems appropriate." *Sybase H.R. Policies & Procedures*, Ex. A to *White-Ivy Aff.*, Dkt. 116-3 at 8. The employee manual's introduction also advises an employee that the employment at-will policy is not subject to change. *Id.* The introduction further states that "[t]he policies set forth in this Manual do not create a contract of employment and they are not to be construed to constitute contractual obligations of any kind between Sybase and you." *Sybase H.R. Policies & Procedures*, Ex. B to *Glubetich Aff.*, Dkt. 126-2 at 9. Given this record, it is impossible for Willnerd to argue that he was anything but an at-will employee. And he concedes as much. *See Willnerd Mem.,* Dkt. 117-1 at 5.

To avoid the effect of his at-will status, Willnerd argues that once Sybase elected to terminate him because his conduct, behavior, or performance was unacceptable, it had to make that determination in good faith. *Id.* at 6. The argument is based upon employment policies which Willnerd contends were incorporated into his employment contract. Specifically, he relies upon language in Sybase's letter offering him employment which required that he acknowledge and execute Sybase's Statement of Values and Business Ethics Policy prior to commencing work. In turn, the Ethics

Statement references Sybase's "Human Resources Policies and Procedures" as the source documents that explain in "greater detail" the Statement of Ethics. *Ethics Statement*, Ex. 10 to *Banducci Dec.*, Dkt. 117-14 at 1. Based upon this, Willnerd contends that the Human Resources Policies and Procedures, like the Ethics Statement, became a part of Willnerd's employment contract. *Id.*; *Willnerd St. of Facts*, ¶¶ 14, 31. Among these policies and procedures is the Termination Policy. *Termination Policy*, Ex. 28 to *Banducci Dec.*, Dkt. 117-25. Section 4.0 of that policy includes a nonexclusive list of the conduct, performance, and behavior that Sybase deems sufficiently "unacceptable" to terminate those employees who exhibit them. *Id.* Thus, Willnerd contends that Section 4.0 became part of his employment contract and limits the grounds for which Sybase could terminate his employment.

Recognizing the futility of arguing that such provisions changed his at-will status, Willnerd couches his arguments in terms of the covenant of good faith and fair dealing, which is implied in all contracts, including those for employment-at-will. *Cantwell v. City of Boise*, 191 P.3d 205, 213 (Idaho 2008). However, the covenant does not provide rights beyond those available under a negotiated contract. *Id.* at 214. Rather, it requires parties to perform in good faith, the obligations existing under the contract. *Id.* at 213. Breach of the covenant occurs where a party "violates, qualifies[,] or significantly impairs any benefit or right of the other party under an employment contract[,] whether express or implied." *Id*. at 213-14. The test for breach of the covenant is objective, and considers the reasonableness of the parties in carrying out the contract. *Independence*

*Lead Mines v. Hecla Mining Co.*, 137 P.3d 409, 414 (Idaho 2006); *Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 390 (Idaho 2005).

> **A.**    **The Implied Covenant of Good Faith and Fair Dealing Cannot Alter Willnerd's At-Will Status.**

The problem with Willnerd's argument is that it is a thinly veiled effort to make an end run around the legal consequences of his at-will employment status.  To argue that Sybase, having stated reasons for Willnerd's termination, must do so in good faith, runs counter to decisions of the Idaho appellate courts cautioning that the implied covenant of good faith and fair dealing cannot be used in this manner.  *Jenkins*, 108 P.3d at 390; *Jones v. Micron Technology*, 923 P.2d at 492 (Idaho Ct. App. 1996).  The reason for such a holding is clear – any other result would be inconsistent with the very concept of at-will employment.[1]  Indeed, no matter how you view it, Willnerd's argument effectively

---

[1] In the seminal decision of the Idaho Supreme Court recognizing the implied covenant of good faith and fair dealing in the context of an employee at-will relationship, the court warned that its decision should not be construed as a modification of the at-will relationship.  *Metcalf v. Intermountain Gas Co*., 778 P.2d 744 (Idaho1989).  The court made this point by quoting extensively from the Arizona Supreme Court's decision in *Wagenseller v. Scottsdale Memorial Hospital,* 710 P.2d 1025 (Ariz.1985) (*en banc*):

> We ... recognize an implied covenant of good faith and fair dealing in the employment-at-will contract, although that covenant does not create a duty for the employer to terminate the employee only for good cause. The covenant does not protect the employee from a "no cause" termination because tenure was never a benefit inherent in the at-will agreement. *The covenant does protect an employee from a discharge based on an employer's desire to avoid the payment of benefits already earned by the employee,* such as the sales commissions in *Fortune* [ *v. National Cash Register Co.,* 373 Mass. 96, 364 N.E.2d 1251 (1977) ], but not the tenure to earn the pension and retirement benefits in *Cleary* [ *v. American Airlines,* 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980) ]....

> ... [B]ecause we are concerned not to place undue restrictions on the employer's discretion in managing his work force and because tenure is contrary to the bargain in an at-will contract, we reject the argument that a no cause termination breaches the implied covenant of good faith and fair dealing in an employment-at-will relationship.

(Continued)

converts his employment contract from "at-will" to "for cause." Although he implies that his argument is more nuanced, the Court finds no practical distinction. As noted above, the other clear language of the offer letter and employee manuals evidence that the parties did not intend such a result.

Willnerd's argument is not materially aided by his reliance upon Sybase's Ethics Statement, or the Termination Policy included in its Human Resources Procedures. The Idaho Supreme Court has held that "an employer may provide guidelines[ ] which are necessary conditions for continued employment, and avoid having them read as . . . placing limits on the reasons for discharge." *Jenkins*, 108 P.3d at 389 (citation omitted). Also, a general policy statement does not constitute an enforceable promise or a modification of an at-will employment contract where the language is too vague for a reasonable person to conclude that the parties intended such a promise or modification. *See Hardenbrook v. United Parcel Service, Co.*, 2009 WL 4798049 at *10 (D. Idaho 2009). Willnerd has not shown that Sybase's Ethics Statement had such specificity that a reasonable person would conclude the parties intended it to limit the manner in which Sybase could discharge Willnerd. This is so, whether the claim is made as a breach of an express provision of the contract or of an implied covenant.

---

*Metcalf*, 778 P.2d at 749 (quoting *Wagenseller,* 710 P.2d at 1040-1041 (emphasis added)).

## B.     *Prado* **Is Not Applicable**

Willnerd argues that the result he seeks here was strongly suggested by the decision of Judge Boyle in *Prado v. Potlatch, Corp*., 2006 WL 2597870 (D. Idaho). The Court has closely reviewed the Prado decision and finds little there to support Willnerd's position.   In *Prado*, the court granted summary judgment to the defendant employer, finding that the implied covenant of good faith was *not* breached.  Willnerd correctly notes that Judge Boyle granted summary judgment to Potlatch because Prado was only able to provide "a mere scintilla of evidence" regarding lack of good faith by his employer.  *Id.* at *9.  From that observation by Judge Boyle in *Prado*, Willnerd suggests that the implied covenant could be used to address deceitful reasons for termination if the plaintiff employee presented sufficient evidence of such.  Such an argument is not well-founded for several reasons.

First, it is, at best, a strained reading of Judge Boyle's decision.  Nothing about the decision suggests that Judge Boyle intended that the implied covenant could be used to address deceitful reasons for termination.

Second, construing Judge Boyle's decision in this manner suggests that he intended to ignore the decisions of Idaho appellate courts suggesting that the implied covenant of good faith and fair dealing cannot be used to undermine the at-will status of an employee.

Finally, Willnerd's interpretation ignores the fact that the alleged bad faith in *Prado* was termination of the plaintiff for filing a worker's compensation claim.   This

raises public policy concerns which clearly distinguishes the decision in that case from the facts presented here.

Although a breach of the implied covenant claim is permissible in cases involving at-will employment, circumstances that factually support such a claim are exceptional. Willnerd has not shown that the facts here support a breach of the covenant. The Court finds no genuine issue of material fact that Willnerd's employment with Sybase was at-will, without any modification placing limits on the reasons for discharge. Accordingly, the Court will deny Willnerd's motion for partial summary judgment, and grant Sybase's motion for summary judgment on the breach of covenant issue.

**2.      Sybase's Motion for Summary Judgment**

### A.      Willnerd's Claim That Discharge Was In Retaliation For Protected Activity Under Title VII and the IHRA

Sybase moves for summary judgment dismissing Willnerd's claims of retaliation under Title VII of the Civil Rights Act, and the Idaho Human Rights Act (IHRA). To survive summary judgment on a claim of retaliation under Title VII of the Civil Rights Act, a plaintiff must demonstrate "(1) involvement in a protected activity, (2) adverse employment action[,] and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (citing *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997)). Where the three elements are satisfied, the burden shifts to the defendant to come forward with a legitimate non-retaliatory basis for the adverse action. *Id.* If the defendant meets this burden, the plaintiff must show a genuine issue of material fact that the defendant's reason for the adverse action was pretext for retaliation. *Id.*

Analysis of claims under the IHRA is the same. *See e.g. Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

As to the first element, Willnerd asserts that he was involved in protected activity under the "participation clause" of Title VII, 42 U.S.C. § 2000e-3. Under that clause, an employer is prohibited from discriminating against an employee for participating "in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The Ninth Circuit has held that "[t]he purpose of section 2000e-3's participation clause 'is to protect the employee who utilizes the tools provided by Congress to protect his rights.'" *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990) (quoting *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978)). Thus, participation clause protection applies only to participation in the context of investigations or proceedings before the Equal Employment Opportunity Commission (EEOC). *Vasconcelos*, 907 F.2d at 113 (other citations omitted). Since Willnerd conceded that his only participation concerned Sybase's internal investigation, Willnerd cannot satisfy the first element of a Title VII retaliation claim.

In arguing that the protected activity element is satisfied, Willnerd cites an Eleventh Circuit case, *Merritt v. Dillard Paper Co.*, 120 F.3d 1181 (11th Cir. 1997) (cited in the EEOC Compliance Manual § 8-II(C)(1), n. 24 (1998)). In that case, the plaintiff's involuntary testimony – in a co-worker's Title VII case – about the plaintiff's own discriminatory conduct was deemed protected under the participation clause. *Merritt*, 120 F.3d at 1186-87. Willnerd argues that, under *Merritt*, his participation in Sybase's investigation of his own alleged misconduct is protected. But significantly, Willnerd fails

to address that the plaintiff's activity in *Merritt* was participation in a Title VII proceeding, which is not the case here.[2]

Willnerd contends that, despite the limitations of Title VII protection outlined in *Vasconcelos*, the United States Supreme Court has implied a potential broadening of the participation clause's reach. In addition to the participation clause, section 2000e-3 has an "opposition clause" which prohibits discrimination for opposing an unlawful employment practice.[3] 42 U.S.C. § 2000e-3(a). In a case cited by Willnerd, the United States Supreme Court held that the opposition clause protected an employee who spoke out about sexual harassment, not during EEOC proceedings, but during her employer's internal investigation into rumors of such harassment. *Crawford v. Metropolitan Gov't of Nashville & Davidson Cy.*, 129 S.Ct. 846 (2009).

In *Crawford*, the court specifically declined to address the plaintiff's claim under the participation clause. *Id.* at 853. But, the court found that opposition clause would support a claim, even though the plaintiff's complaints of sexual harassment were neither made on her own initiative, nor during investigations in the context of EEOC proceedings. *Id.* A finding that the opposition clause did not apply in these circumstances, the court reasoned, could discourage employees from speaking out about

---

[2] Another distinction ignored by Willnerd is that the employer in *Merritt* told plaintiff, upon terminating him, that plaintiff's testimony was "the most damning" to the employer's case. *Merritt*, 120 F.3d at 1187. The court in *Merritt* found that the employer's comment was direct evidence of retaliation. *Id.* at 1187-90. There is no similar evidence of retaliation here.

[3] In his Response to Motion for Summary Judgment, Willnerd withdraws his claim under the opposition clause. *Willnerd Resp.*, Dkt. 124 at 5.

discrimination against themselves or co-workers, for fear of unmitigated retaliation. *Id.* at 852. Such a result would largely undermine the statute's principal goal of avoiding harm to employees. *Id.* (citing *Faragher v. Boca Raton*, 524 U.S. 775, 806 (1998); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417 (1975)). Key to the court's holding in *Crawford* is that the plaintiff's protected action was speaking out about the employer's discrimination. The same cannot be said of Willnerd's alleged protected action.

Nothing about Willnerd's involvement in Sybase's investigation can be characterized as speaking up about discrimination by Sybase. Nor does Willnerd assert as much. Thus, a finding that the opposition clause does not apply here would have no chilling effect on an employee's right to speak out against discrimination. The statute's goal of avoiding harm to employees would be unaffected. There is no evidence that Willnerd has been hindered from using the tools provided by Congress to protect his rights. *See Vasconcelos*, 907 F.2d at 113. Absent a factual or legal basis to extend the decision in *Crawford* here, the Court finds that Willnerd's participation in Sybase's investigation was not a protected activity.

Because Willnerd cannot establish the first element of a prima facie case of retaliation, his claim fails. The Court need not address the remaining elements, or the rest of the burden shifting analysis for Willnerd's claim that his discharge was retaliatory, as contemplated under Title VII. Sybase's motion for summary judgment as to this claim will be granted. Because analysis of IHRA claims is identical to that of Title VII claims, Sybase's motion for summary judgment as to Willnerd's IHRA claim will also be granted.

## B. Wrongful Discharge In Violation of Public Policy

Idaho has recognized a public policy exception to at-will employment where an employee is discharged in retaliation for activity such as refusal to commit an unlawful act, performance of an important public obligation, or exercise of rights or privileges. *Van v. Portneuf Medical Ctr.*, 212 P.3d 982, 991 (Idaho 2009)(citing *Mallonee v. State*, 84 P.3d 551, 557 (Idaho 2004)). The purpose of the public policy exception is to balance "the often competing interests of society, the employer, and the employee." *Edmondson v. Shearer Lumber Products*, 75 P.3d 733, 742 (Idaho 2003) (citing *Crea v. FMC Corp.*, 16 P.3d 272, 275 (Idaho 2000)). "Once the court defines the public policy, the issue of whether the public policy was violated is one for the jury." *Van*, 212 P.3d at 991 (citing *Smith v. Mitton*, 104 P.3d 367, 374 (Idaho 2004)).

For his wrongful discharge claim, it appears that Willnerd asserts the same argument as in his claims under Title VII and the IHRA: that Sybase discharged him in retaliation for his participation in its investigation. Willnerd has not identified any other activity that he contends satisfies the public policy exception. In order to proceed on his claim, the Court must find that Willnerd's participation in Sybase's investigation raises a public policy concern. The Court finds no such concern on the facts before it.

It is undisputed that Sybase requested Willnerd's participation in its investigation of the belt buckle incident, and Willnerd complied. There is no evidence that either party opposed Willnerd's participation and, thus, no evidence of competing interests between them. Nor do the facts suggest a societal interest in need of protection.

In response to Sybase's motion on this issue, Willnerd does not explain how his participation in Sybase's investigation is an action in need of protection, or what public policy is implicated by his participation. Instead, Willnerd asserts the same argument he raised in his motion for partial summary judgment on the breach of covenant claim: that Sybase violated its Termination Policy and Ethics Statement, which Sybase intended to modify Willnerd's at-will employment. As in its analysis of Willnerd's breach of covenant claim, the Court rejects this argument as unsupported by the record. There being no public policy at issue, and no public policy violation, the Court will grant summary judgment to Sybase on this claim.

### C.    Claims Regarding The Education Assistance Agreement

(1)    Willnerd's Claim that Sybase Sought Reimbursement in Retaliation for His Filing an EEOC Complaint.

Under the Education Assistance Agreement between Willnerd and Sybase, the latter paid the former's cost of attending Stanford's Executive Program. The terms of the Agreement provided that Willnerd was to reimburse Sybase if, within 24 months of entering the Agreement, Willnerd was involuntarily discharged for cause. *Second Am. Compl.*, Dkt. 98, ¶ 14; *Agreement*, Ex. 57 to *Willnerd Dep.*, Dkt. 116-12 at 33. Willnerd does not dispute that he was terminated within 24 months of entering the Agreement, but argues that the true reason Sybase pursued reimbursement was retaliation for Willnerd's filing of an EEOC complaint. *Second Am. Compl.*, Dkt. 98, ¶ 85.

As discussed above, to establish a retaliation claim, Willnerd must show: (1) that he engaged in a protected activity, (2) that he suffered adverse action, and (3) a causal

link between the two. *Brooks*, 229 F.3d at 928. As to the first element, the Court finds that the filing of an EEOC complaint qualifies as a protected activity.

a.  Adverse action

Regarding the second element, the United States Supreme Court has explained that Title VII's anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). The prohibited actions or harms need not relate to employment nor occur at the workplace. *Id.* at 63-64. Thus, the fact that Willnerd's employment had been terminated when the alleged adverse action was taken does not preclude relief. The court considers whether "a reasonable employee would have found the challenged action materially adverse." *Id.* at 67-68. In other words, the court determines whether a reasonable employee would be discouraged from bringing a charge of discrimination. *Id.* (citations omitted).

The Ninth Circuit has found that action by an employer, which it was entitled to take, could not be deemed retaliatory "absent a showing of disparate treatment." *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000) (that the defendant city used all of its allotted days to process plaintiff's worker's compensation claim was not evidence of retaliation). Here, Willnerd does not assert disparate treatment. Under the plain terms of the Education Assistance Agreement, Sybase was entitled to reimbursement of tuition, upon Willnerd's discharge for cause. Without any evidence or argument of disparate treatment, there is no basis to find that Sybase's enforcement of its contract discouraged

Willnerd from filing an EEOC complaint.  The Court finds that a reasonable person in Willnerd's position would not find Sybase's action materially adverse.

b.    Causal link

Even if the Court were to find Sybase's action adverse, Willnerd cannot establish a causal link.   The unchallenged facts indicate that Sybase pursued reimbursement on October 24, 2008, roughly two weeks after Willnerd filed his EEOC complaint on October 6, 2008.   Ex. A to *Curiale Dec.*, Dkt. 116-9; Ex. L to *Durgan Aff.*, (*IHRC Determination*), Dkt. 116-23; *Second Am. Compl.* ¶ 73, Dkt. 98.   Under other circumstances, a gap of two weeks between a protected activity and an adverse employment action may be sufficient evidence of a causal link to justify submitting a case to the jury.   However, the facts presented here prevent Willnerd from relying on temporal proximity to supply the required causal link between his filing of an EEOC complaint and Sybase's action to pursue reimbursement under the Education Assistance Agreement.

In *Clark County School District* v. *Breeden,* 532 U.S. 268, 272 (2001), the Supreme Court held that an employer's action in "proceeding along lines *previously contemplated but not yet definitively determined,* is no evidence whatever of causality." *Id.* (emphasis added).  That is precisely the circumstance presented here.   By the time Willnerd filed his EEOC Complaint, the Education Assistance Agreement, with its provision for reimbursement, had already been negotiated and signed.   Moreover, the triggering event for reimbursement – Willnerd's termination for cause – had already

occurred. Thus, Willnerd must provide evidence beyond temporal proximity to establish causation.

Willnerd contends that he has provided substantial evidence that his termination for cause was pretextual, and that such evidence supplies the necessary causal link for his retaliation claim. The challenge for Willnerd is that the decision to terminate him – and to denominate the termination as "for cause" – was made prior to his termination on July 18, 2008. This was almost three months before he filed his EEOC complaint. Thus, for Willerd's argument to make sense, one must assume that Sybase contrived a reason to terminate him "for cause" in July of 2008, anticipating that he would file an EEOC complaint three months later. Such an assumption is not a reasonable inference from the record. Accordingly, the Court concludes that Willnerd has not successfully shown sufficient evidence of a causal link between his filing of his EEOC complaint and Sybase's decision to seek reimbursement of funds advanced under the Education Assistance Agreement.

(2)     Breach of the Education Assistance Agreement

Sybase seeks summary judgment on its counterclaim for recovery of $48,950 as provided for by the Education Assistance Agreement. Sybase also requests summary judgment on Willnerd's claim that Sybase breached the implied covenant of good faith and fair dealing associated with the Agreement.

In analyzing the motions related to Sybase's right to reimbursement under the Education Assistance Agreement, it is immaterial that Willnerd was employed at-will. Rather, the inquiry must focus exclusively on the Agreement, and its provisions that

Sybase is only entitled to reimbursement if Willnerd was terminated "for cause" under Sybase's policies.

This, in turn requires that Willnerd's claim that Sybase violated the implied covenant of good faith and fair dealing be examined differently than it was in the context of his at-will employment. Although, the implied covenant in an at-will employment situation is largely limited to protecting an employee "from discharge based on an employer's desire to avoid payment of benefits already earned by the employee, such as sales commissions," *Metcalf v. Intermountain Gas Co.,* 778 P.2d 744,748 (Idaho 1989) (quoting *Wagenseller v. Scottsdale Memorial Hospital,* 710 P.2d 1025, 1040 (Ariz.1985) (*en banc*)), the same is not true where the implied covenant arises out of a written contract like the Education Assistance Agreement. The covenant does not create rights beyond those expressly agreed to. *Cantwell*, 191 P.3d at 213-14. It "does not extend to obligate a party to accept a material change in the terms of its contract." *Badgett v. Security State Bank*, 807 P.2d 356 (Wash. 1991). However, the covenant does require that the parties perform in good faith all obligations imposed by their agreement, *see Idaho First Nat'l Bank v. Bliss Valley Foods, Inc*., 824 P.2d 841, 863 (Idaho 1991), and is breached by "[a]ny action which violates, nullifies or significantly impairs any benefit or right" which either party has in the contract. *Metcalf*, 778 P.2d at 748.

The contractual rights which Willnerd obtained by virtue of the Education Assistance Agreement, were to have the cost of his participation in the Stanford executive training program paid for by Sybase, and not be required to reimburse Sybase unless he was terminated "for cause" within 24 months after entering the agreement. Thus, the

right at issue here is Willnerd's right not to be required to reimburse Sybase.  The

challenged action is Sybase alleged fabrication of reasons for Willnerd's termination.

Clearly, if Sybase terminated Willnerd without "cause," the express terms of the

Agreement would prevent it from obtaining reimbursement of the sums it paid under the

terms of the Education Assistance Agreement.   On the other hand, if Sybase terminated

Willnerd "for cause" and had legitimate reasons for doing so, the express terms of the

Agreement would entitle Sybase to seek and recover reimbursement of those costs.

Breach of the covenant of good faith and fair dealing "is not shown by evidence that one

party exercised or insisted on its rights under a contract." *St. Alphonsus Regional Med.*

*Ctr., Inc. v. Krueger*, 861 P.2d 71, 79 (Idaho Ct. App. 1992) (quoting *First Security v.*

*Gaige*, 765 P.2d 683, 687 (Idaho 1988)).  But, what if Sybase, although having facially

valid reasons to do so, stated that they were terminating Willnerd "for cause," not

because of his performance or conduct, but to achieve some other purpose, such as to

obtain reimbursement of the sums expended on Willnerd's behalf?  Under those

circumstances, the implied covenant of good faith and fair dealing would prevent Sybase

from using such reasons to deprive Willnerd of his contractual rights under the Education

Assistance Agreement.

Thus, two questions must be answered.  First, are there disputed issues of material

fact as to whether Willnerd's conduct justified his termination "for cause?"   Second, are

there disputed issues of material fact as to whether Sybase was motivated, not by

Willnerd's shortcomings as an employee, but by some other objective, such as to obtain

reimbursement of the sums expended on Willnerd's behalf, and thereby "violate, nullify

or significantly impair" his benefits and rights under the Education Assistance
Agreement?

a.      Was Willnerd Discharged for Cause?

Sybase's termination policy provides that causes for involuntary termination
include violation of the Management Approval Process, and refusal to follow legitimate
direction from a manager.  *Termination Policy*, Ex. 92 to *Willnerd Dep.*, 356:11-18, Dkt.
116-12 at 63.  The three bases for Willnerd's termination identified in Sybase's letter of
termination were (1) Willnerd's mishandling of a significant re-organization, (2)
Willnerd's confrontation of Stefanie Thiel, despite direction from Karen Chapin that he
not do so, and (3) Willnerd's authorization of expenses for Johannes Alberti without
supervisor approval, in violation of Sybase's Management Approval Process.
*Termination Ltr.*, Ex. 90 to *Willnerd Dep.*, Dkt. 116-12 at 60-61.  The second and third
bases for termination appear to satisfy Sybase's definition of "cause" for involuntary
termination.

If there were any disputed facts surrounding the bases for Willnerd's termination,
there would be a triable issue for a jury to decide.  But, Willnerd does not dispute that he
engaged in the conduct described in his termination letter.  In essence, Willnerd does not
challenge the validity of facts supporting discharge for cause.  Instead, Willnerd contends
that the stated reasons were pretextual.   He argues that Sybase chose to terminate him
"for cause," not because of his deficient performance or conduct, but to obtain
reimbursement of the sums paid under the Education Assistance Agreement.   This,

Willnerd argues, violated the implied covenant of good faith and fair dealing.  The Court

thus considers the question of Sybase's motivation for terminating Willnerd.

> b.     In terminating Willnerd, was Sybase motivated out of a desire
> to obtain reimbursement under the Education Assistance
> Agreement?

Willnerd offers four arguments to support his contention that there is evidence in

the record from which a jury might find that Sybase's motivation in discharging him was

other than the "for cause" reasons stated in his letter of termination.

First, regarding his approval of expenses for Johannes Alberti in violation of

Sybase's Management Approval Process, Willnerd states that Sybase "targeted Willnerd,

and Willnerd only, for any fallout" concerning Alberti.  *Willnerd Resp.*, Dkt. 124 at 23.

Through a footnote reference to his Statement of Disputed Facts, Willnerd asserts that

Thiel, Chapin, and Sybase employee Senthil Krishnapillai were also involved in

violations concerning Alberti, but never suffered any adverse employment action.

*Willnerd St. of Disputed Facts*, Dkt. 125 at 7.  However, Willnerd acknowledged in

deposition that, as supervisor, he directed Krishnapillai to bring Alberti over from

Germany, then later, to find less expensive housing for Alberti.  *Willnerd Dep.*, 536:22-

539:19, Ex. A to *Durgan Aff.*, Dkt. 130-1; *Willnerd Dep.*, 303:20-304:25, Ex. 14 to

*Banducci Dec.*, Dkt. 117-18.  By his own testimony, Willnerd gave instructions regarding

arrangements for Alberti; Krishnapillai followed them.

Courts considering motive in the context of discrimination claims, look to whether

similarly situated persons are treated differently.  *Vasquez v. Cy. of Los Angeles*, 349 F.3d

634, 641 (9th Cir. 2003).  Although not in the context of discrimination here, the

"similarly situated" analysis, by analogy, is apt.  The Court finds that the individuals

identified by Willnerd were not similarly situated to him.  Only Willnerd was in a

position to supervise Alberti's expenses.  Krishnapillai, Thiel, and Chapin were not.[4]

Thus the evidence that Willnerd was treated differently fails to demonstrate improper

motive by Sybase, in citing the Alberti issue as a basis for Willnerd's termination.

Indeed, the factor that distinguishes Willnerd from the others – his responsibility

for overseeing Alberti's expenses[5] – is reflected in § 10.16 of the Management Approval

Process which Sybase asserts Willnerd violated.  Section 10.16 of the Management

Approval Process required approval by Willnerd's supervisor, Terry Stepien, or by Vice

President for Sybase's Worldwide Human Resources, Nita White-Ivy, before expenses to

rent or lease housing for Alberti could be made.  Ex. F to *Chapin Aff.*, Dkt. 116-5 at 33.

Notably, in his response to Sybase's motion, Willnerd does not dispute that his actions

concerning Alberti violated the Management Approval Process, as determined by his

supervisor, Terry Stepien.[6]  The Court therefore rejects Willnerd's challenge to the truth

---

[4] In his briefing and Statement of Disputed Facts, Willnerd gives no indication that Thiel or Chapin were involved in directing Alberti's expenses, or otherwise elaborate on how Thiel or Chapin were involved.  The Court need not "comb through the record to find some reason to deny a motion for summary judgment," *Carmen*, 237 F.3d at 1029, rather, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts."  *Southern California Gas Co.*, 336 F.3d at 889. Given Chapin's and Thiel's positions as human resources supervisors, the Court cannot find that they had decision-making responsibility for approval of Alberti's expenses.

[5] In § 10.16, this responsibility is described as "functional approval."  Ex. F to *Chapin Aff.*, Dkt. 116-5 at 33.

[6] In the memorandum supporting his Motion for Partial Summary Judgment, Willnerd cites Karen Chapin's deposition testimony that she erred in concluding Willnerd violated the Management Approval Process § 10.16, regarding Alberti.  *Willnerd Mem.*, Dkt. 117-1 at 19 (citing *Chapin Dep.*, 242:20-243:4, Dkt. 117-10).  However, Willnerd omits Chapin's follow-up that "although Mr. Willnerd is not required to sign the [Management Approval Process], it is his responsibility to ensure that all the proper approvals (Continued)

or validity of this basis for his discharge – a ground for termination which meets the definition of "cause" under Sybase's Termination Policy on its face.  Ex. 92 to *Willnerd Dep.*

Regarding Willnerd's mishandling of a major re-organization as cause for his termination, Sybase highlighted Willnerd's failure to complete Personnel Action Requests before announcing the re-organization constituted bad judgment on his part.  As evidence that this basis for termination was false, Willnerd notes that Sybase policy does not require Personnel Action Requests to be completed before announcing a re-organization.  *Willnerd Resp.*, Dkt. 124 at 23.  This argument ignores the fundamental nature of Sybase's concern – that Willnerd's handling of the re-organization created "an extremely serious morale problem," regardless of whether it directly violated a company policy.  *Termination Ltr.*  Willnerd does not dispute Sybase's finding that his poor judgment caused a "crisis of confidence" in his ability to serve as an effective manager. *Id.*  Significantly, although this reason for discharge is subjective, Willnerd does not argue that he in fact exercised good judgment in his handling of the re-organization.  The Court finds that Willnerd has failed to identify a triable issue that this basis for discharge was false.

Willnerd's third challenge to the reasons for his discharge is that Sybase relied on results from his "360" employee review in terminating him.   Willnerd contends that this

---

are done within the organization."  *See id.* 243:12-244:14.  Further, Willnerd does not challenge that Stepien, who made the final decision terminating Willnerd, concluded that Willnerd had violated § 10.16. *Stepien Dep.*, 81:15-19 and 182:4-6, Dkt. 117-8.

shows pretext on the part of Sybase, because such reviews – according to Sybase CEO John Chen – were not to be used as a basis for terminations. *Willnerd Resp.*, Dkt. 124 at 23. However, Willnerd's termination letter recites three instances of poor judgment – not the results of the 360 review – as the basis for termination. *Termination Ltr.*, Dkt. 116-12 at 60-61. The letter does refer to the 360 review, but only as providing further support for the conclusion that Willnerd demonstrated "extremely poor judgment." *Id.* Moreover, whether Sybase departed from its internal policy of restricting the purposes for which 360 reviews could be used seems largely irrelevant to the question of Sybase's termination. The Court concludes that Sybase's reliance, if any, on Willnerd's 360 review does not support a reasonable inference that Sybase's stated reasons for discharge were a pretext to permit Sybase to recover the funds advanced under the Education Assistance Agreement.

Finally, Willnerd challenges that his termination was based on his confrontation of Stefanie Thiel regarding the belt buckle incident. *Willnerd Resp.*, Dkt. 124 at 23. In support of his contention that ground for termination was pretextual, Willnerd notes that Thiel had agreed to speak with Willnerd. *Thiel Dep.* at 153-55, Ex. 7 to *Banducci Dec.*, Dkt. 117-11 at 39. However, Thiel's testimony at deposition reflects that she "did not think he was going to go into a discussion about [the belt buckle incident]." *Id.* Although Willnerd said they were "going to have an uncomfortable conversation," Thiel testified that, as a human resources employee, "you have uncomfortable conversations all the time . . . so you just [say] okay." *Id.* Even if Thiel had knowingly consented to the conversation, Willnerd does not dispute that he approached Thiel about the belt buckle

incident despite Chapin's direct instruction not to do so – which again meets the definition of cause under Sybase's Termination Policy. Ex. 92 to *Willnerd Dep.*

In summary, Willnerd's arguments are distractions from the relevant issue of whether Sybase's motivation in discharging Willnerd was unrelated to the performance-based reasons provided by Sybase. He offers no direct evidence of pretext. At best, his arguments depend upon inferences which he claims can be derived from circumstantial evidence. However, the Court finds that the inferences are so strained as to be unreasonable and inadequate to support a jury's verdict.[7] After construing all reasonable inferences which can be derived from the evidence in a light most favorable to Willnerd, the Court is not persuaded there are disputed issues of material fact on his claim that the reasons stated by Sybase for his termination were pretextual.

Absent a sufficient showing of pretext, the undisputed evidence demonstrates that Sybase merely insisted on its right to reimbursement under the Education Assistance Agreement. There is no genuine issue of material fact regarding the Education Assistance Agreement claims. Thus, the Court will grant summary judgment to Sybase on its counterclaim for breach of contract, and dismiss Willnerd's claims of retaliation and breach of contract regarding the Agreement.

---

[7] Again, in the somewhat different context of a Title VII retaliation claim, a plaintiff who presents only indirect or circumstantial evidence "that the employer's motives were different from its stated motives," must provide "'specific' and 'substantial' evidence of pretext to survive summary judgment." *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003)(citation omitted). But regardless, of how the legal standard is stated, it is clear to the Court that after construing all reasonable inferences which can be derived from the evidence in a light most favorable to Willnerd, he has failed to establish the existence of disputed issues of material fact on the pretext issue.

**D.      Defamation**

The Court previously examined Willnerd's claim for defamation in his first amended complaint, and dismissed with leave to amend. *Order*, Dkt. 71. As discussed in that decision, one cannot be sued for expressing his or her opinion. *Weimer v. Rankin*, 790 P.2d 347, 352 (Idaho 1990) (citing *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2nd Cir. 1977) (other citations omitted)). The opinion defense can be overcome, however, by showing that the defamatory statement was "a negative characterization . . . coupled with a clear but false implication that the [speaker or writer] is privy to facts about the [allegedly defamed] person that are unknown" to those hearing or reading the statement. *Id.*

Willnerd identifies the following allegedly defamatory statement made by Karen Chapin to Nita White-Ivy, Vice President of Sybase's Worldwide Human Resources, regarding Willnerd's purported lack of skill as a manager: "If I was a betting person, I would say that 50% of the employees will look for new positions." *Second Am. Compl.*, Dkt. 98, ¶ 118. The Court finds that Chapin's qualifying language, "I would say," unmistakably frames the statement as opinion. Willnerd has asserted no evidence that Chapin implied, let alone falsely implied, that she was privy to additional information about Willnerd of which White-Ivy, Chapin's superior, was unaware. Instead, Willnerd asserts that *White-Ivy* was *not* privy to facts from Chapin's investigation of Willnerd. Aside from use of the word "privy" in the context of Chapin and White-Ivy, this assertion falls far short of satisfying the possible exception to the opinion defense, that a false

implication of privileged knowledge be clearly expressed. *Weimer*, 790 P.2d at 352; *Hotchner*, 551 F.2d at 913.

Willnerd implies there are other defamatory statements not set forth in the Second Amended Complaint. *Second Am. Compl.*, Dkt. 98, ¶ 118. At this stage in litigation, and given the admonishments of this Court in dismissing the initial defamation claim with leave to amend, the Court finds that Willnerd's amended defamation claim is inadequate to proceed to trial. Willnerd has had ample time and opportunity to develop his case. Having failed to show a genuine issue of material fact for a jury to decide on the claim of defamation, the Court will grant Sybase's motion to dismiss it.

3.    **Motions to Strike**

In addressing the parties' motions herein, the Court has not relied on the materials at issue in Willnerd's and Sybase's respective motions to strike. *Willnerd Mot.*, Dkt. 123; *Sybase Mot.*, Dkt. 131. Accordingly, the Court will deny these motions as moot.

ORDER

**IT IS ORDERED:**

1.    Plaintiff's Motion for Partial Summary Judgment (Dkt. 117) is **DENIED**.

2.    Defendant's Motion for Summary Judgment (Dkt. 116) is **GRANTED**.

3.    Plaintiff's and Defendant's Motions to Strike (Dkts. 123, 131) are

**DENIED AS MOOT.**



DATED: July 12, 2011

B. Lynn Winmill
Chief Judge
United States District Court